IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

EARL BERNARD BLASINGAME AND
MARGARET GOOCH BLASINGAME,
AS CO-TRUSTEES AND ON BEHALF
OF BLASINGAME FAMILY BUSINESS
INVESTMENT TRUST,

    Plaintiffs,

v.                                              No. 15-1038

CHURCH JOINT VENTURE, L.P. AND
THE CADLE COMPANY,

    Defendants.

_____

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
_____

Before the Court is a motion to dismiss, or alternatively, for judgment on the pleadings, brought pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure, by the Defendants, Church Joint Venture, L.P. and The Cadle Company (collectively "Defendants"). (Docket Entry ("D.E.") 20.) Plaintiffs, Earl Bernard Blasingame and Margaret Gooch Blasingame, as co-trustees and on behalf of the Blasingame Family Business Investment Trust (collectively "Plaintiffs" or "Trust"), have responded in opposition, and the Defendants have filed a reply. (D.E. 22, 27.) For the reasons discussed below, the motion is GRANTED IN PART and DENIED IN PART.

*Legal Standard*

A Rule 12(c) motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion to dismiss. *Lindsey v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007)

("[T]he legal standards for adjudicating Rule 12(b)6 and Rule 12(c) motions are the same[.]"). Courts must construe the complaint "in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Therefore, the dispositive question becomes whether the complaint contains "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014) (quoting *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)).

Rule 8 of the Federal Rules of Civil Procedure sets out a liberal pleading standard, requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "'[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice.'" *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 652 (6th Cir. 2014) (quoting *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007)). The complaint "must go beyond 'labels and conclusions' or a mere 'formulaic recitation of the elements of a cause of action,'" to survive a motion for judgment on the pleadings. *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355 (6th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

*Background*[1]

Plaintiffs filed this action in the Circuit Court of McNairy County, Tennessee on February 10, 2015, which Defendants removed to this Court on February 23, 2015 on the basis of diversity jurisdiction. (D.E. 1.) The impetus for the suit is the Defendants' October 27, 2009[2]

---

[1] The factual allegations are taken from the complaint, and are accepted as true for the purposes of deciding this motion.
[2] The lis pendens was signed and notarized on October 23, 2009, but was not recorded until October 27, 2009.

recording of a "Notice of Lis Pendens" with the McNairy County, Tennessee Register of Deeds concerning all properties controlled by several entities—including the Trust, which owns 1700 acres of farmland in McNairy County ("The Farm"). (*Id.* ¶¶ 4, 12.) The Farm was financed by a loan that matured on July 1, 2012. (*Id.* ¶ 8.) Prior to that date, the Trust had begun the process of applying for a new long-term loan. (*Id.*) MetLife Agricultural Investments ("MetLife") initially approved the Trust's application for a $2,000,000.00 loan to be paid over twenty years at 4.60% interest. (*Id.* ¶ 9.) However, after performing a title search, MetLife discovered the lis pendens and withdrew the offer. (*Id.* ¶ 10.) Plaintiffs obtained a short-term loan for $2,000,000.00, at an annual interest rate of 6.5%, and eventually secured long term financing at a rate of 5.95%. (*Id.* ¶¶ 16–18.) The Trust will pay an additional $724,175.48 over the life of the loan because of the higher interest rate. (*Id.* ¶ 19.)

*Analysis*

Defendants seek the dismissal of Plaintiffs' libel/slander of title[3], negligence, negligence per se, and declaratory judgment claims. The parties agree that Tennessee substantive law applies.

---

[3] In their memorandum, Defendants moved to dismiss Plaintiffs' libel claim as time barred pursuant to Tenn. Code Ann. § 28-3-104, which requires such claims to be brought within one year after accrual. (D.E. 21 at 4–6.) After reviewing the complaint, the Court finds that Plaintiffs did not state a libel claim, but instead, alleged a libel *of title* claim, a separate and distinct cause of action in Tennessee. *See Ezell v. Graves*, 807 S.W.2d 700, 701 (Tenn. Ct. App. 1990) ("Libel of title has long been recognized as an actionable tort in Tennessee."). Defendants' arguments concerning whether the lis pendens contained false statements, or whether they acted with malice or reckless disregard, will be considered in determining whether the Plaintiffs satisfied Rule 8's pleading requirements with respect to the libel of title claim.

Count 2 of Plaintiffs' complaint is labeled "libel/slander of title." (D.E. 1 at 5.) In Tennessee, the phrases libel and slander of title are used interchangeably, so the Court will use "libel of title" in discussing Count 2 of the complaint in this order. *See Phillips v. Woods*, No. E2007-00697-COA-R3-CV, 2008 WL 836161, at *6 n.4 (Tenn. Ct. App. Mar. 31, 2008) ("We focus on 'libel' of title because the instant case involves a writing. With respect to the basis upon which we decide the case, what we say about libel of title applies with equal force to slander of title. The action is sometimes referred to as one for disparagement of title. We have previously held that this cause of action, regardless of the label placed upon it, is a species of the claim for 'injurious falsehood.'") (citations omitted).

**I.    Libel of Title**

Defendants maintain that the libel of title claim should be dismissed because the Blasingames failed to include sufficient facts to state a plausible claim under Rule 8, or, alternatively, they did not initiate this action within a year after its accrual. (D.E. 21 at 4–7.)

   *A.    Failure to State a Claim*

To state a claim for libel of title in Tennessee, a plaintiff must allege "(1) that it has an interest in the property, (2) that the defendant published false statements about the title to the property, (3) that the defendant was acting maliciously, and (4) that the false statements proximately caused the plaintiff a pecuniary loss." *Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999) (internal quotation marks omitted) (citation omitted); *Cowart v. Hammontree*, No. E2013-00416-COA-R3-CV, 2013 WL 6211463, at *13 (Tenn. Ct. App. Nov. 27, 2013) (stating that libel of title occurs when a party, "without privilege to do so, willfully records or publishes matter which is untrue and disparaging to another's property rights in land as would lead a reasonable person to foresee that the conduct of a third party purchaser might be determined by the publication, or maliciously records a document which clouds another's title to real estate.") (internal quotation marks omitted) (citation omitted). Defendants assert that Plaintiffs have failed to present facts that plausibly state that the lis pendens contained false statements, or that they acted maliciously. (D.E. 21 at 4–7.)

   *1.    Publishing a False Statement*

Defendants aver that the Plaintiffs did not identify any false statements in the lis pendens concerning the Trust's title to the Farm and, instead, allege only that the lis pendens contained incomplete information. (D.E. 21 at 5–6.) The Blasingames insist that the lis pendens falsely

4

identified the Trust as a co-defendant in—and the Farm as the subject of—an adversary proceeding related to the co-trustees individual Chapter 7 bankruptcy before the United States Bankruptcy Court for the Western District of Tennessee. (D.E. 22 at 6–7.)

Plaintiffs attached a copy of the lis pendens to their complaint, which the Court may consider in deciding these motions. *See Burns v. United States*, 542 F. App'x 461, 466 (6th Cir. 2013) ("A document referred to or attached to the pleadings, and integral to plaintiff's claims, may also be considered without converting a motion to dismiss into one for summary judgment.") (citing *Commercial Money Ctr. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)). The lis pendens identifies the Trust as one of several defendants in the aforementioned adversarial proceeding, and states that "[t]he Lawsuit involves, in part, questions regarding and asks the Bankruptcy Court to declare the rights of the parties with respect to the ownership and title in and to the Property, as well as the establishment of any interest in the Property." (D.E. 1-1 at 17–18.) Plaintiffs admit that the Trust owns the Farm, which is located in McNairy County, Tennessee, (D.E. 1 ¶¶ 1, 4), that the Defendants, who are creditors of the Blasingames, have made a claim in excess of $4,000,000.00 against them individually, (*id.* ¶ 13), and that there was an adversarial proceeding filed to determine whether the Blasingames and the defendants fraudulently transferred certain properties which are referenced in the lis pendens. (*Id.*)

In *Dowdell v. Cotham*, No. M2006-00750-COA-R3-CV, 2007 WL 2198169 (Tenn. Ct. App. July 25, 2007), a plaintiff brought a libel of title claim, alleging that the defendants, who had placed a large sign on the disputed property line, had published false statements on that sign. *Id.* at *1–3, 5. The sign included phrases like "No Sale," "Property Line Dispute", "We only

5

want what is ours," and "This is not the correct property line." *Id.* at *2, 9. Plaintiff argued that the messages were false and adversely affected his ability to sell the property. *Id.* at *2. The Tennessee Court of Appeals affirmed the trial court's finding that the statements on the sign were not false because they "accurately indicated there was a property or boundary line dispute." *Id.* at *9–10.

Here, none of the statements in the lis pendens are false, as they accurately identify the Trust as a co-defendant in the adversarial proceeding and state the purpose of the proceeding—to determine whether certain property transfers—including the Farm—were fraudulent. Plaintiffs admit that the adversarial proceeding was not dismissed until 2012, well after the October 27, 2009 recording of the lis pendens. (D.E. 1 ¶ 13.) Based on the factual allegations in the complaint, the Blasingames have failed to identify any false statement contained in the lis pendens at the time of its recording.

Plaintiffs' remaining allegation states that the entire lis pendens was false because it did not describe specific property, or the amount of lien sought to be fixed, in violation of Tenn. Code Ann. § 20-3-101's recording requirements. (*Id.* ¶ 26; D.E. 22 at 7.) However, Defendants' failure to comply with § 20-3-101's requirements does not make the truthful statements in the lis pendens false. Accordingly, the claim for libel of title is DISMISSED.

### 2. *Acting Maliciously or with Reckless Disregard*

Even assuming the statements in the lis pendens were false, Plaintiffs have not claimed that the Defendants acted maliciously, or with reckless disregard, when they recorded the lis pendens. To state a claim for libel of title, "plaintiffs must allege 'malice . . . in express terms or by any such showing of facts as would give rise to a reasonable inference that defendants acted

6

maliciously.'" *Gilliard v. JP Morgan Chase Bank, N.A.*, No: 3-12-CV-236, 2012 WL 6139922, at *4 (E.D. Tenn. Dec. 11, 2012) (quoting *Brooks*, 15 S.W.3d at 484). "'Statements made with reckless disregard of the property owner's rights or with reckless disregard as to whether the statements are false may be malicious within the scope of a libel of title action.'" *Id.* (quoting *Brooks*, 15 S.W.3d at 484). "A good faith, but erroneous, claim of title does not constitute a cause of action for libel of title." *Brooks*, 15 S.W.3d at 484 (citing *Graves*, 807 S.W.2d at 704).

In *Ezell v. Graves*, 807 S.W.2d 700 (Tenn. Ct. App. 1990), the Tennessee Court of Appeals affirmed the trial court's finding that the plaintiffs' complaint sufficiently alleged malice by the defendants, when it stated that the defendants held themselves out as owners of the plaintiffs' land even though the defendants' deed had been declared void in a prior lawsuit. *Id.* at 704. In *Phillips v. Woods*, No. E2007-00697-COA-R3-CV, 2008 WL 836161 (Tenn. Ct. App. Mar. 31, 2008), the Tennessee Court of Appeals affirmed the trial court's finding of malice by the defendants, who prepared, executed, and recorded a deed to a driveway even though the defendants "knew they did not own the driveway, and, when they could not acquire it from the true owner, . . . they attempted to take it by making, executing and recording the deed, with reckless disregard of the legal rights of [the owner]." *Id.* at *9. Finally, in *Kinzel Springs P'ship v. King*, No. E2008-01555-COA-R3-CV, 2009 WL 2341546 (Tenn. Ct. App. July 30, 2009), the Tennessee Court of Appeals confirmed the trial court's malice finding, noting that "prior to the [defendants'] purchase of Lot 27A, a well-known and respected title attorney refused to issue title insurance on the disputed property," and that the defendants "were on notice prior to the purchase of the property that there were serious issues concerning the ownership of it." *Id.* at *17. Despite this knowledge, the defendants executed and recorded a quitclaim deed that

7

purported to convey that disputed property to them even before the first lawsuit to quiet title had concluded. *Id.* Both the trial and appellate court found that the defendants' willful and intentional actions demonstrated a reckless disregard of the plaintiff's property rights. *Id.*

In this case, the Blasingames have failed to set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. They insist that the Defendants' recording of the lis pendens was malicious and reckless because it did not comply with Tenn. Code Ann. § 20-3-101's requirements, was done with the purpose of creating a cloud of title on the property, and was not terminated even after the adversarial proceeding was dismissed in 2012. (D.E. 22 at 7.)

Defendants' failure to comply with § 20-3-101, however, does not "'allege malice . . . in express terms'" or "'give rise to a reasonable inference that defendants acted maliciously,'" *Gilliard*, 2012 WL 6139922, at *4 (quoting *Brooks*, 15 S.W.3d at 484), by recording the lis pendens. Plaintiffs admit that the Defendants initiated an adversarial proceeding to have the bankruptcy court determine whether the co-trustees' transfer of properties, including the Farm, was fraudulent. (D.E. 1 ¶ 13.) The Defendants' failure to specifically list each property, or the amount of lien to be fixed, was not malicious, and does not give rise to a reasonable inference that they recklessly disregarded the Trust's property rights in recording the incomplete lis pendens.

Next, Plaintiffs assert that the recording of the lis pendens was a malicious act to create a cloud of title to the Farm, in a further attempt by the Defendants to collect the $4,000,000.00 claim related to the co-trustees Chapter 7 bankruptcy. (D.E. 22 at 7.) However, the recording of the lis pendens was not malicious or reckless, because, at the time of its recording, there was an

adversarial proceeding addressing the issue of whether certain properties, including the Farm, were fraudulently transferred by the co-trustees. Defendants had a good faith belief that the Farm had been fraudulently transferred, and filed a legal proceeding to determine the validity of their claim to the disputed property. Unlike the defendants in *Graves*, *Woods*, and *King*, there are no allegations that the Defendants here had any prior knowledge that their claims were meritless at the time they recorded the lis pendens.

Finally, the Defendants' failure to terminate the lis pendens following the dismissal of the adversarial proceeding in 2012 does not make the act of recording it malicious or reckless, because, on October 27, 2009, the adversarial proceeding was still before the bankruptcy court. *Compare Harmon v. Shell*, No. 1409, 01-A-01-9211CH00451, 1994 WL 148663, at *1, 3–4 (Tenn. Ct. App. Apr. 27, 1994) (finding that the defendant acted with malice or reckless disregard because he knew, or should have known, that his claim to the plaintiffs' property was false because the land at issue had been judicially determined to belong to the plaintiffs in a prior court proceeding) *with Moore v. Brock*, No. E2012-002247-COA-R3-CV, 2013 WL 3198152, at *12 (Tenn. Ct. App. June 21, 2013) ("Furthermore, we agree with the Trial Court that making a claim to property lawfully in dispute does not satisfy the requirement to show malice on the part of Defendants."). The Court also takes judicial notice of the fact that the fraudulent transfer claims from the adversarial proceeding were refiled, and are still before the United States District Court for the Western District of Tennessee. *See Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 n.2 (6th Cir. 2012) ("We can take judicial notice of developments in related 'proceedings in other courts of record.'") (quoting *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 n.5 (6th Cir. 2005)); *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005).

9

The factual allegations in the complaint fail to state a plausible libel of title claim. Assuming the truth of these contentions, the Defendants could have had a good faith belief that recording the lis pendens was another proper alternative by which to protect their claims against the co-trustees. Because the complaint fails to allege sufficient facts that the Defendants recorded the lis pendens with malice or reckless disregard, the libel of title claim is DISMISSED.[4]

## II. Negligence

Defendants maintain that the negligence claim is barred by Tennessee's one-year statute of limitations for injuries to the person provided in Tenn. Code Ann. § 28-3-104(a)(1). (D.E. 21 at 7.) The Blasingames aver that this claim was timely filed because it involves an injury to personal or real property, and is governed by the three-year statute of limitations set forth in Tenn. Code Ann. § 28-3-105.[5] (D.E. 22 at 14.) This matter was filed on February 10, 2015 and MetLife declined its financing on the Farm in November of 2012. The viability of this claim turns on which statute of limitations applies.

While neither party referenced this case, the Tennessee Supreme Court recently clarified "the analysis that should be used to determine the applicable statute of limitations when a complaint alleges more than one claim." *Benz-Elliot v. Barrett Enters., LP*, 456 S.W.3d 140,

---

[4] As Plaintiffs have failed to state a libel of title claim under Rule 8, the Court does not reach the statute of limitations issue.

[5] Both parties disagree about the proper application of the discovery rule to Plaintiffs' libel of title claim and whether it was timely filed under Tennessee's one or three-year statute of limitations. (*See* D.E. 21 at 5–6 *and* D.E. 22 at 9–14.) Neither party raised the accrual issue as to the negligence claim, and seem to agree that the earliest date Plaintiffs could have discovered the injury was when MetLife withdrew its loan in November of 2012 after discovering the lis pendens. (*See* D.E. 21 at 7 *and* D.E. 22 at 14.) If there is any dispute, the Court finds that the negligence claim did not accrue until MetLife discovered the lis pendens and withdrew the loan. This conclusion is supported by the fact that there is no notice requirement after recording a lis pendens. *See McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn. 1975) ("We hold that in tort actions . . . predicated on negligence . . . the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered.").

141 (Tenn. 2015). Courts must now identify and determine the gravamen of each claim, which requires consideration of "both the legal basis of the claim and the injury for which damages are sought." *Id.* This two-step approach is "fact-intensive and requires a careful examination of the allegations of the complaint as to each claim for the types of injuries asserted and the damages sought." *Id.* at 151. Courts applying this analysis following *Benz-Elliot* have isolated and analyzed each claim to determine the legal basis and the type of damages sought as to that claim. *See Kaddoura v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. E2013-02573-COA-R3-CV, 2015 WL 1909727, at *4–5 (Tenn. Ct. App. Apr. 27, 2015).

Plaintiffs maintain that Defendants breached their duty to the Trust by negligently recording an incomplete lis pendens, which caused the Trust economic injury because of the higher interest rate it must pay over the life of the loan. (D.E. 1 ¶¶ 31–33.) Defendants aver that this claim is personal to the Blasingames, because they will be solely responsible as co-trustees for paying the additional costs resulting from the higher interest rate. (D.E. 27 at 4–5.) Defendants insist that the Plaintiffs have failed to explain how the Farm's value was diminished, or how its title was negatively impacted by the lis pendens, which removes this claim from § 28-3-105's three-year limitations period for injuries to personal or real property. (*Id.*)

Tennessee courts have recognized that the phrase "injures to the person", as it is used in Tenn. Code Ann. § 28-3-104(a)(1)(A), carries a broader meaning than merely physical injury to the body. *See Blalock v. Preston Law Grp., P.C.*, No. M2011-00351-COA-R3-CV, 2012 WL 4503187, at *5 (Tenn. Ct. App. Sept. 28, 2012) (citing *Brown v. Dunstan*, 409 S.W.2d 365 (Tenn. 1966)). Courts have applied this one-year limitations statute to retaliatory discharge claims, *Sudberry v. Royal & Sun Alliance*, M2005-00280-COA-R3-CV, 2006 WL 2091386, at

11

*5 (Tenn. Ct. App. July 27, 2006), abuse of process claims, *Blalock*, 2012 WL 4503187, at *7, mental anguish claims under the Tennessee Adult Protection Act, *In re Estate of Wair*, No. M2014-00164-COA-R3-CV, 2014 WL 3697562, at *3 (Tenn. Ct. App. July 23, 2014), and wrongful death claims. *Sullivan ex rel. Wrongful Death Beneficiaries of Sullivan v. Chattanooga Med. Investors, LP*, 221 S.W.3d 506, 508 (Tenn. 2007). In adopting this broader interpretation, Tennessee courts have held the one-year statute of limitations applies to "actions brought for injuries resulting from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law." *Dunstan*, 409 S.W.2d at 367.

However, injuries to the person should be "distinguished from those [injuries] which accrue to an individual by reason of some peculiar status or by virtue of an interest created by contract or property." *Id.* Tennessee courts have rejected the narrow conclusion that "injury to property as contemplated [by Tenn. Code Ann. § 28-3-105] is limited to physical injury to property," *Vance v. Schulder*, 547 S.W.2d 927, 932 (Tenn. 1977), and have adopted the "opinion that a loss in value is also considered injury to property." *Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 642 (Tenn. 2003) (citing *Vance*, 547 S.W.2d at 932). Relevant to this case,

> both of the limitations statutes involving property injuries and personal injuries have been interpreted to apply to negligence claims for solely economic damages: claims for economic damages arising from invasions of rights that "inhere in man as a rational being" are governed by the limitations period for injuries to the person, *see Dunstan*, 409 S.W.2d at 367, and claims for economic damages arising from property rights are governed by the three-year limitations period for injuries to property. *See Tip's Package Store, Inc. v. Commercial Ins. Managers, Inc.*, 86 S.W.3d 543, 552 (Tenn. Ct. App. 2001).

*Gunter*, 121 S.W.3d at 642. When courts are faced with parties alleging that each of those respective statutes of limitations applies, it must "determine whether [plaintiffs'] alleged injuries arise out of [their] property rights or [their] rights as a 'rational being.'" *Id.*

Here, the Blasingames claim that the Defendants breached their duty[6] to file a valid and complete lis pendens, which caused injury to the spendthrift trust. (D.E. 1 ¶¶ 30–34.) They contend that "[a]s a result of the lis pendens filed by Defendants, which caused MetLife to decline its loan offer, BFBIT will pay an additional $724,175.48 during the twenty year life of its current loan with Farm Credit and the interim loan with Wayne County Bank." (*Id.* ¶ 19.)

The legal basis for this claim is negligence, and Plaintiffs are seeking general and special compensatory damages in the amount of $800,000.00. The gravamen of this claim is an injury to the personal and real property of the Trust, specifically the additional money that must be expended to cover the higher interest rate obtained as a result of MetLife withdrawing its initial loan and more favorable rate. Like the plaintiff in *Gunter*, who was seeking money damages based on a financial obligation, 121 S.W.3d at 642, the Plaintiffs here are seeking damages in the amount of additional interest owed as a result of Defendants' alleged negligence. Therefore, Tenn. Code Ann. § 28-3-105's three-year statute of limitations applies to this claim. Defendants' motion to dismiss is DENIED.

### III. Negligence Per Se

Defendants request that the negligence per se claim be dismissed as Tenn. Code Ann. § 20-3-101 is not a penal statute. (D.E. 21 at 8; D.E. 27 at 5.) Plaintiffs respond that Defendants'

---

[6] For the first time in their reply, Defendants argue that they were under no duty to file a lis pendens that complied with Tenn. Code Ann. § 20-3-101. (D.E. 27 at 4–5.) Because the Plaintiffs did not have an opportunity to respond to this argument, it will not be considered for the purposes of deciding this motion.

failure to comply with the recording requirements set forth in § 20-3-101 was negligence per se. (D.E. 22 at 14–15.) No Tennessee court, nor federal courts sitting in diversity, has held that violating § 20-3-101 is negligence per se.

"In Tennessee, the common-law standard of conduct to which a person must conform to avoid being negligent is the familiar 'reasonable person under similar circumstances' standard." *Rains v. Bend of the River*, 124 S.W.3d 580, 588 (Tenn. Ct. App. 2003) (citations omitted). "However, the common law is not the only source of legal duties or standards of conduct in negligence cases. In addition to the general duty to act reasonably . . . more specific duties governing particular situations and relationships may be imposed by the [Tennessee] General Assembly." *Id.* at 588–89 (citation omitted). These legislatively created duties can arise in two ways: (1) "the General Assembly may create a legal duty and then provide a civil cause of action for its breach;" (2) "the General Assembly may enact a penal statute that does not explicitly provide a civil remedy, and the courts may then derive a civil legal duty from the penal statute." *Id.* at 589 (footnote omitted). "The negligence per se doctrine enables the courts to mold standards of conduct in penal statutes into rules of civil liability." *Id.*

The Tennessee Supreme Court has summarized the doctrine of negligence per se as follows:

> "The standard of conduct expected of a reasonable person may be prescribed in a statute and, consequently, a violation of the statute may be deemed to be negligence per se. When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard of care . . . from which it is negligence to deviate. In order to establish negligence per se, it must be shown that the statute violated was designed to impose a duty or prohibit an act for the benefit of a person or the public. It must also be established that the injured party was within the class of persons that the statute was meant to protect."

*Estate of French v. Stratford House*, 333 S.W.3d 546, 560–61 (Tenn. 2011) (quoting *Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn. 1994)). Further, "'[n]ot every statutory violation amounts to negligence per se. . . . [T]he courts must ultimately decide whether they will adopt a statutory standard to define the standard of conduct of reasonable persons in specific circumstances.'" *Id.* at 561 (quoting *Whaley v. Perkins*, 197 S.W.3d 665, 673 (Tenn. 2006)); *Rains*, 124 S.W.3d at 589 ("Not every statutory violation amounts to negligence per se. To trigger the doctrine, the statute must establish a specific standard of conduct.") (citations omitted).

A court must initially decide "'whether the plaintiff belongs to the class of persons the statute was designed to protect and whether the plaintiff's injury is of the type the statute was designed to prevent.'" *Whaley*, 197 S.W.3d at 673 (quoting *Rains*, 124 S.W.3d at 590–91). If a plaintiff satisfies this initial inquiry, the court must then consider several additional factors, including: "(1) the nature of the legislative provision; (2) the adequacy of existing remedies; (3) the extent to which recognizing a cause of action in negligence per se would aid, supplement, or interfere with existing remedies; (4) the significance of the purpose that the legislative body was seeking to effectuate in the statute, regulation, or ordinance; (5) the extent of the change in tort law that would result for recognizing the action; and (6) the burden that the new cause of action would place on the judiciary." *Estate of French*, 333 S.W.3d at 562 (citing *Restatement (Second) of Torts* § 874A, cmt. h (1979)).

Tenn. Code Ann. § 20-3-101 is entitled "Real estate; abstract; filing" and states

(a) When any person, in any court of record, by declaration, petition, bill or cross bill, seeks to fix a lien lis pendens on real state, or any interest in real estate, situated in the county of suit, in furtherance of the setting aside of a fraudulent conveyance, or subjection of property under return of nulla

15

> bona, tracing a trust fund, enforcing an equitable vendor's lien, or otherwise, that person shall file for record in the register's office of the county an abstract, certified by the clerk, containing the names of the parties to the suit, a description of the real estate affected, its ownership and a brief statement of the nature and amount of the lien sought to be fixed.
>
> (b) Until the abstract is so filed, so far as concerns the rights of bona fide purchasers and encumbrancers, for value, of the realty, or any interest in the realty, they shall not be affected.

Tenn. Code Ann. § 20-3-101(a)–(b). The lis pendens statute is found in Title 20 of the Tennessee Code, which contains the Tennessee Civil Procedure statutes. Plaintiffs, as co-trustees, have not demonstrated how they, or the Trust, belong to the class of persons § 20-3-101 is meant to protect. Section 20-3-101's text sets forth the proper procedure for recording a lis pendens, but is silent about any penalty that could be imposed for failing to comply with its requirements. The statute does not set forth any standard of care. There is no indication from the statute's text that it was established by the General Assembly in an effort to address injuries caused to those who are the victim of improperly recorded lis pendens. In fact, the only penalty the statute does provide is that improper lis pendens have no legal significance as to the true owners or bona fide purchasers. *See* Tenn. Code Ann. § 20-3-101(b). There is also no evidence that the lis pendens statute was established to prevent the injury suffered by the Plaintiffs in this case. Instead, its location in Title 20 supports the conclusion that the statute was passed to provide parties with the correct procedure to file legally sufficient lis pendens. Section 20-3-101 is not the type of penal statute that the Tennessee courts typically provide an additional civil remedy for its violation.

Even if the Plaintiffs satisfied this initial inquiry, consideration of the additional factors warrants the conclusion that a party's violation of § 20-3-101 is not negligence per se. First, the

lis pendens statute is found in Title 20, which concerns state civil procedure, a somewhat unusual place for the General Assembly to insert a penal statute. As there are adequate alternative remedies, such as libel/slander of title and negligence, recognizing a violation of § 20-3-101 as negligence per se would interfere with already existing state law remedies, and would provide no additional supplement to those remedies. Finally, the Court, sitting in diversity, is not inclined to impose a new legal duty, which might create a burden on the Tennessee judiciary, and result in a significant change in Tennessee tort law. Accordingly, Plaintiffs' negligence per se claim for violating § 20-3-101 is DISMISSED.

## IV. Declaratory Judgment

Plaintiffs request the Court declare the validity of the lis pendens and the rights, status and other legal relations of the parties pursuant to Tennessee's Declaratory Judgment statute, Tenn. Code Ann. § 29-14-101, *et seq*. (D.E. 1 ¶¶ 20–23.) Defendants seek dismissal of this claim on the assumption that Plaintiffs' other claims are subject to dismissal. (D.E. 21 at 4.) However, because Plaintiffs' negligence claim was not dismissed, Defendants' motion is DENIED as to this claim.

*Conclusion*

Defendants' motion is GRANTED IN PART and DENIED IN PART. Plaintiffs' claims for libel of title and negligence per se are DISMISSED.

IT IS SO ORDERED this 12th day of August, 2015.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE